UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

SCOTT SINWELL,

        Plaintiff,

   v.                  25-CV-1181 (JLS)

DEBORAH A. HAENDIGES, ERIE
COUNTY COURT/NEW YORK STATE
COURT, and ERIE COUNTY
CORRECTIONAL FACILITY STAFF,[1]

        Defendants.

_____

### DECISION AND ORDER

    *Pro se* Plaintiff, Scott Sinwell, is confined at Erie County Correctional Facility

("ECCF") and has filed this action seeking relief under 42 U.S.C. § 1983.  Dkt. 1.  He

alleges violations of his constitutional rights in connection with his criminal

proceedings, as well as his conditions of confinement at ECCF.  *Id.*

    Sinwell seeks permission to proceed *in forma pauperis* ("IFP") and has filed

the required authorization.[2]  Dkt. 4.  Because Sinwell meets the requirements of

28 U.S.C. § 1915(a) and filed the required authorization, he is granted permission to

_____

[1] The Clerk of Court shall update the caption as reflected above with corrected
spellings for the intended defendants.

[2] Sinwell initially did not file a motion to proceed IFP or pay the filing fee,
prompting this Court to administratively terminate this action and to provide
Sinwell with an opportunity to file an IFP motion or pay the fee.  Dkt. 2.  Sinwell
then filed a complete IFP motion.  Dkt. 4.

proceed IFP. The Court, therefore, screens his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

For the reasons below, Sinwell's claims against Judge Haendiges and Erie County/New York Courts, as well as his claims based on human rights treaty violations, are dismissed without leave to amend. Sinwell's remaining Section 1983 claims, including those against Erie County, are dismissed with leave to amend.

## DISCUSSION

### I.    LEGAL STANDARDS

#### A.    Review Under the IFP Statutes

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

#### B.    Pleading Standards

In evaluating a complaint, the court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a

complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must contain sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (summary order) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Scott Phillip Lewis v. R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (summary order) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*,

556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 557). Although
a court is "obligated to draw the most favorable inferences that [a plaintiff]'s
complaint supports, [it] cannot invent factual allegations that he [or she] has not
pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### C.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the
challenged conduct (1) was attributable to a person acting under color of state law,
and (2) deprived the plaintiff of a right, privilege, or immunity secured by the
Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d
400, 405 (2d Cir. 1997). Section 1983 "itself creates no substantive rights; it
provides only a procedure for redress for the deprivation of rights established
elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of
Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must
allege that individual's personal involvement in the alleged constitutional violation;
it is not enough to assert that the defendant is a link in the chain of command. *See
McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of
*respondeat superior* is not available in a Section 1983 action. *See Hernandez v.
Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory
liability." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a
plaintiff must plead and prove 'that each Government-official defendant, through

4

the official's own individual actions, has violated the Constitution.'" *Id.* (quoting

*Iqbal*, 556 U.S. at 676).

### D.    Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to

be heard prior to dismissal, unless it "can rule out any possibility, however

unlikely it might be, that an amended complaint would succeed in stating a claim."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal*

*Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)).  But a court may deny leave to

amend pleadings when any amendment would be futile.  *See Cuoco v. Moritsugu*,

222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131

(2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be

productive . . . it is not an abuse of discretion to deny leave to amend.").

## II.    PLAINTIFF'S ALLEGATIONS

A liberal reading of the complaint tells the following story.  Beginning in

2023 and continuing to present, Judge Deborah A. Haendiges "intentionally and

willfully" has violated Sinwell's rights using her position to write "unconstitutional

court orders[.]"  Dkt. 1 at 4, 5.  Judge Haendiges has kept Sinwell "in jail without

conviction for 3 years" and "has deprived [him] of his speedy trial rights."  *Id.* at 5.

She has "made discriminatory statements" about Sinwell, bullied him with threats,

and acted discriminatorily towards him because he is a man.  *Id.*  She further has

violated Sinwell's right to presumption of innocence, stopped him from voting, took

his personal property without fair payment, and made him "property of the State of

New York without conviction[.]" *Id.* Judge Haendiges used her power to "weaponize the law" and "taken [Sinwell's] life[.]" *Id.*

The Erie County and New York State Courts have allowed Judge Haendiges to continue to violate people's rights, despite there being "over 1,000 complaints to New York State" regarding her and former District Attorney John Flynn asking New York to remove her from judicial office. *Id.* Erie County is responsible for Judge Haendiges's actions and "allowing her to get away with it." *Id.*

ECCF staff have knowingly violated Sinwell's rights by not providing him treatment for stage 3 cancer and for forcing him to live in an unhealthy environment. *Id.* at 5. This includes forcing him to shower with no doors or walls, with guards and other inmates being able to see his nakedness; to use unclean bathrooms with no doors or walls, allowing others to see him; to drink water from unclean sinks; to eat unhealthy food that makes him sick; to be strip-searched at the whim of the guards, with punishment in a box without air, outside light, or movement for days, weeks, and months if he refuses; to sleep on unsafe bunk beds; and to be housed with convicted murderers, rapists, and other "bad people" who have been convicted of crimes, while Sinwell has not been convicted. *Id.*

Sinwell alleges violations of his First, Fourth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights. *Id.* at 3. He also alleges treaty violations involving human rights and "[t]he following laws and provisions crim[i]nal process 52 to 59." *Id.* He seeks damages in the amount of $20 million for emotional and physical stress, emotional and physical injury, loss of his home and money, lack of treatment

for stage 3 cancer, lack of treatment for mental issues, being unable to eat, having physical and mental pain, and P.T.S.D. *Id.* at 4.

## III.    ANALYSIS

### A.    Defendants Sued

#### 1.  Claims Against Judge Haendiges

Absent "an express waiver of sovereign immunity, or a clear abrogation of that immunity by Congress, the Eleventh Amendment generally bars Plaintiff from suing courts within the New York State Unified Court system, as well as state judicial officers in their official capacities, in federal court for legal and equitable relief." *Gribbin v. New York State Unified Ct. Sys.*, No. 18-CV-6100(PKC)(AKT), 2020 WL 1536324, at *4 (E.D.N.Y. Mar. 31, 2020), *aff'd*, 838 F. App'x 646 (2d Cir. 2021) (summary order).

For claims against judges in their individual capacity, they enjoy absolute immunity unless the judge takes an action outside of his or her judicial capacity or in the complete absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Judicial immunity "is to ensure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Paulk v. Kearns*, 596 F. Supp. 3d 491, 496 (W.D.N.Y. 2022) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). Such immunity is therefore not overcome by "allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, or because the actions were taken "in error" or "in excess of . . . authority," *id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

Statutory judicial immunity likewise bars claims for injunctive relief against judges for acts taken in their judicial capacity unless the plaintiff alleges that "a declaratory decree was violated" or that "declaratory relief was unavailable." 42 U.S.C. § 1983; *see Felgemacher v. Carney*, No. 25-CV-128-LJV, 2025 WL 2261251, at *6 (W.D.N.Y. Aug. 6, 2025).

The allegations in the complaint neither allege nor suggest that Judge Haendiges took action outside of her judicial capacity or in the complete absence of all jurisdiction. Nor has Sinwell alleged that Judge Haendiges violated a declaratory decree or that declaratory relief was unavailable.

Sinwell's claims against Judge Haendiges, therefore, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i), (iii) and 1915A(b)(1), (2) on the basis of immunity and as legally frivolous without leave to amend. *See Hahn v. New York*, 825 F. App'x 53, 55 (2d Cir. 2020) (summary order) (affirming a dismissal on judicial immunity grounds without granting leave to amend); *Brady v. Ostrager*, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) ("Given . . . judicial immunity, the district court correctly held that amendment would be futile."); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g)."); *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, at *2 (2d Cir. Jan. 17, 2024) (summary order) ("[B]ecause it is 'unmistakably clear' based on the allegations in the complaint that judicial immunity applies in this particular case and that the claims are thus legally frivolous, the district court was not required to provide [plaintiff] with notice and an

opportunity to be heard prior to the dismissal." (quoting *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018))).

### 2. Claims Against New York Unified Court System

As noted above, Eleventh Amendment immunity "extends beyond the states themselves to 'state agents and state instrumentalities' that are . . . arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

Sinwell sues "Erie County Courts/ New York State Courts" as a defendant. The Court construes Sinwell to sue the New York Unified Court System. "The New York Unified Court System is an arm of the [s]tate . . . and is therefore protected by Eleventh Amendment sovereign immunity." *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("Other courts in this Circuit have routinely concluded that the Eleventh Amendment shields the Unified Court System from civil liability."); *Bently v. Thomas*, No. 22-CV-8215 (LTS), 2022 WL 14054223, at *2 (S.D.N.Y. Oct. 24, 2022) ("The County Court is part of the New York State Unified Court System . . . and as such, it is unquestionably an arm of the State.") (citation modified). Because New York has not waived its Section 1983 immunity, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977), and because Congress has not abrogated it, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), the New York Unified Court System is immune from suit, *see Gollomp*, 568 F.3d at 366.

Accordingly, Sinwell's claims against Erie County Court, the New York

Unified Court System, and any other New York court are dismissed for lack of

subject matter jurisdiction without prejudice and without leave to amend.

### 3.  Claims Against ECCF Staff in their Official Capacities

Sinwell also sues ECCF staff.  To the extent Sinwell sues any ECCF[3] staff in

in their official capacities,[4] such claims are equivalent to claims against Erie

County.  *See LaFever v. Clarke*, 525 F. Supp. 3d 305, 338 (N.D.N.Y. 2021) ("To the

extent that [the plaintiff] intended to sue [the] Sheriff . . . in his official capacity, the

Supreme Court has explained that this kind of claim is 'to be treated as a suit

against the entity'; *i.e.*, the County itself." (emphasis omitted) (quoting *Kentucky v.

Graham*, 473 U.S. 159, 165-66 (1985))).

Although municipalities are considered "persons" for purposes of Section 1983,

a local government may not be held liable under Section 1983 unless the challenged

---

[3] Any claims against ECCF itself are also subject to dismissal.  Under "New York
law, departments that are merely administrative arms of a municipality do not
have a legal identity separate and apart from the municipality and, therefore,
cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477
(E.D.N.Y. 2002); *Tulloch v. Erie Cnty. Holding Ctr.*, No. 10-CV-0207S, 2010 WL
2609054, at *2 (W.D.N.Y. June 24, 2010) ("[C]laims against the Erie County
Holding Center must be dismissed because . . . the Erie County Holding Center is
merely an arm of the County, and does not have a legal identity separate and apart
from the County and thus cannot be sued.").

[4] Where, as here, "a *pro se* litigant does not specify in what capacity the individual
defendants are being sued, courts generally 'liberally construe the complaint as
alleging both official and individual capacity claims.'" *Anderson v. Pedalty*, No. 14-
CV-00192, 2015 WL 1735192, at *3 (W.D.N.Y. Apr. 16, 2015) (quoting *McCloud v.
Kane*, 491 F. Supp. 2d 312, 316 (E.D.N.Y. 2007)).

action was performed pursuant to a municipal policy or custom. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). To hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

> An official policy or custom can be established by showing:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Kurmangaliyev v. City of New York*, No. 22-CV-5656 (LDH), 2023 WL 8654023, at *2 (E.D.N.Y. Dec. 14, 2023) (collecting cases).

Sinwell's allegations do not suggest that an official custom or policy of Erie County led to or caused the alleged constitutional violations that occurred at ECCF. The Court, therefore, concludes that the complaint does not plausibly allege municipal liability, and the claims against ECCF staff in their official capacities are dismissed with leave to amend. The claims in the amended complaint may be brought against Erie County itself and/or its employees in their individual capacity.

### 4. Claims Against ECCF Staff in their Individual Capacities

Sinwell's Section 1983 claims against ECCF Staff in their individual capacities fail because he does not allege any individual staff member's personal

11

involvement in the unconstitutional conduct. *Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 266 (N.D.N.Y. 2023). As "a corollary to the personal-involvement rule, complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'" *Id.* (quoting *Wilson v. County of Ulster*, No. 1:20-cv-104, 2022 WL 813958, *7 (N.D.N.Y. Mar. 17, 2022)). Besides the reasons discussed further below, Sinwell's claims against ECCF staff in their individual capacities are dismissed for failure to allege any individual's personal involvement.

### B.    Fourteenth Amendment Conditions of Confinement Claims

In the context of pretrial detention, conditions of confinement claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

This standard includes an objective component "showing that the challenged conditions were sufficiently serious to constitute objective deprivations[.]" *Id.* The allegations supporting this component must "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the inmate's] health[.]" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). "Thus, prison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

There is also a subjective component that addresses whether a defendant possessed the requisite state of mind. Allegations supporting the subjective, or state of mind component of a Fourteenth Amendment claim must show "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "Mere knowledge and acquiescence to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim under Section 1983." *Smith v. Westchester County*, No. 19-CV-03605 (NSR), 2021 WL 2856515, at *7 (S.D.N.Y. July 7, 2021) (citation modified). A "defendant's high position or rank is not sufficient in and of itself to show that the defendant is, or should be aware of something—plaintiffs need more factual support showing *why or how* defendants are or should be aware of something." *Id.* (citing *Crispin v. Westchester County*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *4 (S.D.N.Y. June 10, 2019)).

1. Food

The Constitution requires that both prisoners and detainees "be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *Smith*, 2021 WL 2856515, at *7 (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)); *Warren v. City of New York*, No. 18-CV-4410 (ALC), 2020 WL 353772, at *3 (S.D.N.Y. Jan. 21, 2020).

13

Sinwell alleges he is forced to eat unhealthy food that makes him sick.  *See*

Dkt. 1 at 6.  As to the objective element, Sinwell does not allege any injuries beyond

the vague assertion that the food makes him sick.  Sinwell must allege how

consuming this substandard or deficient food adversely impacted or posed an

unreasonable risk of serious damage to his health.  *See Rasheen v. Adner*, 356 F.

Supp. 3d 222, 241 (N.D.N.Y. 2019) (dismissing claim because, besides general

allegations regarding potential health implications, the plaintiff failed to allege that

he actually suffered any injury as a result of ingesting contaminated food).

Sinwell also has failed to allege facts supporting the subjective element. He

does not allege that there was a policy, as needed for a *Monell* claim, resulting in

serving inmates unsanitary or spoiled food.   Nor has he alleged facts to show that

any individual defendant was deliberately indifferent to, and personally involved in,

forcing Sinwell to eat substandard food.  *See Shorter v. Nassau County*, 779 F. Supp.

3d 311, 315-16 (E.D.N.Y. 2025) (plaintiff did not allege personal involvement of any

facility cook because he failed to specify which of them prepared his food and did so

knowing about his "allergens" that caused the constitutional violation).

This claim is dismissed with leave to amend.

2.  Drinking Water

Inmates must be supplied with water that is suitable for drinking.  *See*

*Bellezza v. Fischer*, No. 05 Civ. 98(DLC), 2006 WL 3019760, at *4 (S.D.N.Y. Oct. 24,

2006) ("Water that is suitable for drinking and bathing is undeniably one of 'life's

necessities,' and . . . [must] be supplied to inmates."); *see also Cruz v. Jackson*, No.

94 CIV. 2600 (RWS), 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) ("Because contaminated water may pose serious health problems, an allegation that prison officials persistently provided only rusty drinking water would satisfy the objective component.") (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)).

Here, Sinwell fails to "allege that the condition of the water posed an unreasonable risk of serious damage to his health." *Clay v. Lee*, No. 13-CV-7662 (KMK), 2017 WL 436041, at *5 (S.D.N.Y. Jan. 30, 2017) (citing *Walker*, 717 F.3d at 125). He alleges only that he is "forced to drink water drawn from unclean sinks." Dkt. 1 at 6. But he has not identified any "injuries specifically stemming from the alleged unsafe water, to show that the water was truly unsafe to drink." *Smith*, 2021 WL 2856515, at *8 (emphasis omitted).

Similarly to his food-related claim, Sinwell has also failed to plead specific facts showing any individual defendant knew or should have known of the serious risk posed by the drinking water and failed to remedy it.

This claim is dismissed with leave to amend.

### 3. Unsanitary and Unsafe Conditions

Sinwell further alleges he was forced to use "unclean bathrooms" and sleep on unsafe bunks. Dkt. 1 at 6.

"Unsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items . . . can rise to the level of an objective deprivation." *Shabazz v. Brunelle*, No. 3:25-CV-00060 (VAB), 2025 WL 1726323, at *5 (D. Conn. June 20, 2025) (quoting *Darnell*,

849 F.3d at 30). As the Second Circuit has instructed, "the proper lens through which to analyze allegedly unconstitutional unsanitary conditions of confinement is with reference to their severity and duration, not the detainee's resulting injury." *Edwards v. Arocho*, 125 F.4th 336, 351 (2d Cir. 2024) (quoting *Darnell*, 849 F.3d at 30). Even so, "the inquiry is not 'subject to a bright-line durational or severity threshold.'" *Id.* (quoting *Darnell*, 849 F.3d at 32)).

Sinwell has provided little detail of the duration or severity of these conditions. Sinwell also fails to allege facts to suggest any municipal policy or individual defendant was responsible for imposing or failing to remedy these conditions as needed to maintain a Fourteenth Amendment claim.

This claim is dismissed with leave to amend.

### C.    Remaining Fourteenth Amendment Claims

#### 1.  Denial of Medical Care

In the context of pretrial detention, claims involving the denial of medical care are also analyzed under the Due Process Clause of the Fourteenth Amendment. *See Darnell*, 849 F.3d at 29-35. A Fourteenth Amendment medical indifference claim requires a pretrial detainee to plausibly allege an objective prong demonstrating the existence of a "serious medical need" and a "*mens rea*" prong that defendants "acted with deliberate indifference to such needs." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *Darnell*, 849 F.3d at 29.

The serious medical need element "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.* There is "no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Courts consider factors such as "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86.

Under the *mens rea* prong, "something more than mere negligence" is necessary. *Id.* at 87 (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). Deliberate indifference "can be shown by something akin to recklessness" but "does not require proof of a malicious or callous state of mind." *Id.* at 86. Thus, similar to a conditions of confinement claim, a plaintiff can "allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87.

Sinwell alleges that he was not given treatment for stage 3 cancer. Dkt. 1 at 6. While he provides no details about his diagnosis and what, if any, treatment he received, the Court accepts, at this stage, that Sinwell's cancer likely qualifies as a serious medical condition. *See, e.g., Jones v. Heap*, No. 3:21-CV-921 (JAM), 2022 WL 2078188, at *2 (D. Conn. June 9, 2022) ("For purposes of this order, [the court]

will assume that Jones's cancer is serious enough to satisfy the objective prong of the Eighth Amendment standard."). But even assuming that the objective element is satisfied, Sinwell fails to allege facts to show that any defendant was deliberately indifferent to his serious medical needs.

This claim is dismissed with leave to amend.

### 2. Substantive Due Process Claim

Sinwell alleges he placed in a restrictive housing setting for refusing to consent to a full strip search. Dkt. 1 at 6  He also alleges that he was housed with criminals despite not being convicted of any crimes. *Id.*

To determine whether a pretrial detainee's conditions of confinement are punitive in violation of the detainee's substantive due process rights, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). While a "person lawfully committed to pretrial detention has not been adjudged guilty of any crime[,]" he may nevertheless be "detained for a suspected violation" of a law and subject "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37; *see Bass v. Swartwood*, No. 25-503, 2025 WL 3703527, at *2 (2d Cir. Dec. 22, 2025) (summary order) ("It is black letter law

that a substantive due process deprivation may lie if a pretrial detainee is 'punished.'") (citing *Bell*, 441 U.S. at 535).

Sinwell has not alleged any facts suggesting that his conditions of confinement were punitive. He only alleges that he was in an unsafe, dangerous environment with murderers and rapists despite himself not having been convicted of a crime yet. Dkt. 1 at 6. Without more, the fact that Sinwell was housed with such individuals—whether they were convicted or not of serious crimes—is incidental to his pretrial detention and does not amount to a constitutional violation. *See Bell*, 441 U.S. at 524, 537, 546 n.28 (noting that where pretrial detainee plaintiffs were housed in a facility with convicted criminals, whether it is called "a jail, a prison, or a custodial center, the purpose of the facility is to detain," and "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates").

To the extent that Sinwell may allege a claim that he was punished by placement in restrictive confinement for his refusal to consent to a strip search, he nevertheless fails to identify a specific defendant who was personally involved in said treatment, or a policy leading to it.

This claim is dismissed with leave to amend.

3. Voting

A pretrial detainee's right to vote is guaranteed by the Fourteenth Amendment's Equal Protection Clause. *See O'Brien v. Skinner*, 414 U.S. 524, 529-31 (1974). Consequently, pretrial detainees must have access to absentee ballots so

19

long as they are otherwise legally qualified to vote. *See id.* at 530–31; *Carson v. N.Y.C. D.O.C.*, No. 24-CV-10052 (LLS), 2025 WL 2371219, at *2 (S.D.N.Y. Aug. 11, 2025) ("Where a pretrial detainee seeks access to the ballot box, the claim for relief is 'not the right to vote . . . but a claimed right to receive absentee ballots.'" (alteration in original) (quoting *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807 (1969))).

Sinwell has not alleged how he was denied access to an absentee ballot, besides alleging that Judge Haendiges "stopped [him] from voting[.]" Dkt. 1 at 5. This conclusory allegation is not sufficient to state a colorable claim that his right to vote was impeded in violation of the Equal Protection clause. *See, e.g., Carson*, 2025 WL 2371219, at *2 (dismissing with leave to amend pretrial detainee's voting claim because plaintiff did not allege he was eligible to vote, met the requirements for registration and sought assistance, or that social workers otherwise denied him access to an absentee ballot). He may amend the complaint to add appropriate defendant(s) and state a plausible claim of individual and/or municipal liability.

### D.    Fourth Amendment Claims

"The Fourth Amendment 'protects individual privacy against certain kinds of governmental intrusion,' and it is well-established that its protections extend to prisoners and pretrial detainees." *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (quoting *Katz v. United States*, 389 U.S. 347, 350 (1967); and citing *Bell*, 441 U.S. at 545, 559). To "state a cognizable privacy claim, an inmate must allege that (1) he 'exhibited an actual, subjective expectation of bodily

20

privacy,' and (2) prison officials lacked 'sufficient justification to intrude on the inmate's [F]ourth [A]mendment rights.'" *Telesford v. Annucci*, 693 F. App'x 1, 3 (2d Cir. 2017) (summary order) (quoting *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016)).

Generally, the failure to provide an inmate "with privacy while using the bathroom does not rise to the level of a constitutional violation because it [is] reasonably related to maintaining the security of the detention facility." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 217 (E.D.N.Y. 2005) (addressing the privacy claim of a pretrial detainee under the Fourteenth Amendment); *see also Cooper v. Annucci*, No. 9:18-CV-0762(GTS)(CFH), 2018 WL 11578624, at *15 (N.D.N.Y. Aug. 30, 2018) ("[T]here is no expectation of privacy in showers, clinics, or other areas in which prison officials routinely monitor and search prisoners." (quoting *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *12 (S.D.N.Y. Mar. 28, 2018))).

But the Second Circuit "has recognized a privacy interest concerning the 'involuntary viewing of private parts of the body by prison officials of the opposite sex.'" *Rivera v. Doe*, No. 3:22-CV-852 (SVN), 2023 WL 319600, at *3 (D. Conn. Jan. 19, 2023) (citation modified) (quoting *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980)). Courts "in this Circuit . . . 'distinguish between "regular" and "close" viewings of a naked prisoner of the opposite sex and "incidental" and "brief" viewings and find viewings of the latter type constitutional.'" *Id.* (quoting *Langron*

21

*v. Koniecko*, No. 3:21-CV-1531 (MPS), 2021 WL 5827065, at *2 (D. Conn. Dec. 8, 2021)).

Sinwell's Fourth Amendment allegations fall into two categories: first, he was forced to strip naked and be searched in front of officers; and second, he was forced to use bathrooms with no dividers, so that inmates and officers could see him naked. Dkt. 1 at 6. Sinwell has failed to allege he had an actual, subjective expectation of bodily privacy or that the intrusions were not justified in either of these situations. As to the first, Sinwell has not alleged anything about what prompted these searches, their frequency or duration, or anything else regarding the circumstances in which they occurred. As to the second situation, Sinwell has not alleged that any bathroom viewings of him naked by inmates or guards were anything beyond incidental, brief viewings that are inherent in a prison or jail setting. Lastly, as with his other claims, Sinwell has not identified an appropriate defendant who was personally involved in these searches and viewings, or the existence of a policy leading to these alleged violations.

These claims are dismissed with leave to amend.

## E.    Human Rights Claims

In addition to the constitutional amendments already discussed, Sinwell cites, as bases for federal jurisdiction, purported human rights provisions of federal law as well as United Nations treaties. The Court is unaware of the laws and treaties Sinwell references —however, it may be a reference to the Universal Declaration of Human Rights ("UDHR").

To the extent that Sinwell alleges a claim based on a purported violation of the UDHR or other treaty, "a treaty . . . must either be found to be self-executing or, alternatively, must have been the subject of implementing legislation by Congress" to be the basis for a Section 1983 claim. *Shabazz v. Annucci*, No. 9:20-CV-0057(LEK)(TWD), 2020 WL 13801106, at *7 (N.D.N.Y. Apr. 7, 2020) (quoting *Ciaprazi v. Goord*, 02-CV-915, 2005 WL 3531464, at *15 (N.D.N.Y. Dec. 22, 2005)). The Second Circuit has described the UDHR, however, as a "non-binding" document, *see id.* (citing *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 167–68 (2d Cir. 2003)), that does "not itself create obligations enforceable in federal courts," *id.* (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004)). Thus, a purported violation of the UDHR does not give rise to a cognizable constitutional claim. *See id.*; *see also Hamilton v. Fischer*, 12-CV-6449, 2013 WL 3784153, at *5 (W.D.N.Y. July 18, 2013).

Any claim based on a violation of the UDHR or other treaty is dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted. Because amendment would be futile, the dismissal is without leave to amend.

## CONCLUSION

Because Sinwell has met the statutory requirements of 28 U.S.C. § 1915(a) and filed the authorization, his request to proceed *in forma pauperis* is granted. For the reasons above, Sinwell's claims against Judge Haendiges and Erie County/New York Courts, as well as his claims based on human rights treaty violations, are

dismissed without leave to amend. Sinwell's remaining Section 1983 claims, including those against Erie County, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), but with leave to amend.

Sinwell may file an amended complaint by **April 23, 2026,** in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Sinwell is advised that an amended complaint **replaces completely** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint in this action.

Sinwell is further advised that he has been granted leave to amend only those claims addressed above. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases).

## ORDER

IT HEREBY IS ORDERED that Sinwell's motion to proceed IFP (Dkt. 4) is granted; and it is further

ORDERED that Sinwell's claims against Judge Haendiges and Erie County/New York Courts, as well as his claims against ECCF staff in their official

capacities, are dismissed without prejudice and without leave to amend; and it is further

ORDERED that his claims based on human rights treaty violations are dismissed without leave to amend; and it is further

ORDERED that Sinwell's remaining Section 1983 claims, including those against Erie County, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim, but with leave to amend; and it is further

ORDERED that Sinwell may file an amended complaint as directed above by no later than **April 23, 2026**; and it is further

ORDERED that the Clerk of the Court shall send to Sinwell with this order a copy of the original complaint, a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Sinwell does not file an amended complaint by the deadline set forth above, the claims dismissed will remain dismissed and the Clerk of the Court shall close this case without further order; and it is further

ORDERED that in the event the complaint is dismissed because Sinwell has failed to file an amended complaint, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the

Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate

Procedure; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil

Procedure 5.2(d), Sinwell must immediately notify the Court in writing each time

his/her address changes.  Failure to do so may result in dismissal of the action with

prejudice.

SO ORDERED.

Dated:      March 9, 2026
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE